UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO/CLC<br>　　　　　　Plaintiff,<br><br>v.<br><br>ArcleorMittal USA and AM/NS,<br>　　　　　　Defendants. | Case No.: 2:19-cv-00360 |

## COMPLAINT

Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied-Industrial & Service Workers International Union, AFL-CIO/CLC ("USW" or "Union") files the instant Complaint to require Defendants ArcelorMittal USA ("AMUSA") and AM/NS Calvert ("AM/NS") to arbitrate a dispute arising out of the Union's labor agreement with AMUSA, the relevant portions of which AM/NS is a party to. In support of this action, the Union avers the following:

### Parties and Jurisdiction

1.　　This action is brought pursuant to section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

2.　　The Union is a labor organization representing employees in industries affecting commerce under the meaning of the LMRA, 29 U.S.C. §§ 142, et seq. The Union provides such representation within the geographic area covered by this court.

3. ArcelorMittal USA ("AMUSA") is an employer engaged in an industry affecting commerce as defined in the LMRA, 29 U.S.C. § 142, *et seq*, with principal executive offices located at 250 West US Highway 12, Burns Harbor, Indiana, within the geographic area covered by this court.

4. AM/NS is an employer engaged in an industry affecting commerce as defined in the LMRA, 29 U.S.C. § 142, *et seq*, AM/NS operates a steel mill in Calvert, Alabama.

5. AM/NS is a 50/50 joint venture of ArcelorMittal and Nippon Steel & Summimoto Metal Corporation. ArcelorMittal is the managing joint venture partner of AM/NS.

6. The Union is the exclusive bargaining representative for certain bargaining unit employees employed by AMUSA at various facilities across the United States.

### The Neutrality Agreement

7. The Union and AMUSA are parties to a basic labor agreement ("BLA") which applies to the employees at various AMUSA facilities throughout the country, effective from September 1, 2018, through September 1, 2022. A true and correct copy of the BLA is attached hereto as Exhibit 1.

8. Article II, Section E of the BLA ("Neutrality Agreement") sets forth procedures and obligations for any efforts by the Union to organize unrepresented employees at AMUSA facilities or the facilities of certain "affiliates" or "ventures" of AMUSA (as such terms are defined in the Neutrality Agreement). Exhibit 1, p.11-17.

9. Paragraph 5(a)(1) of the Neutrality Agreement provides that the terms of the Neutrality Agreement apply to any "Affiliate or Venture" of AMUSA that is "engaged in . . . the making, finishing, processing, fabricating, transportation, distribution or warehousing of steel."

10. Paragraph 5(a)(2) of the Neutrality Agreement defines "Affiliate" as:

An Affiliate shall mean any business enterprise that Controls, is under the Control of, or is under common Control with the Company.

Control of a business enterprise shall mean possession, directly or indirectly, of either:

    (a)    fifty percent (50%) of the equity of the enterprise; or

    (b)    the power to direct the management and policies of said enterprise.

11. AM/NS is an "Affiliate" as defined in Paragraph 5(a)(2) of the Neutrality Agreement.

12. AM/NS is "engaged in . . . the making, finishing, processing, fabricating, transportation, distribution or warehousing of steel."

13. Paragraph 5(b) of the Neutrality Agreement requires AMUSA to "cause all its existing Affiliates and/or Ventures that are covered by the provisions of Paragraph 5(a)(1)(a) above to become a party/parties to this Section and to achieve compliance with its provisions."

14. Paragraph 3(d)(5)(a) of the Neutrality Agreement provides:

If, at any time during an Organizing Campaign which follows the existence of a substantial and representative complement of employees in any unit appropriate for collective bargaining, the Union demands recognition, the parties will request that a mutually acceptable neutral (or an arbitrator from the American Arbitration Association if no agreement on a mutually acceptable neutral can be reached) conduct a card check within five (5) days of the making of the request.

15. Paragraph 7 of the Neutrality Agreement provides a procedure for resolving "[a]ny alleged violation or dispute involving the terms" of the Neutrality Agreement. When such a dispute "cannot be satisfactorily resolved by the parties, either party may submit such dispute to the arbitrator."

16. Any decision by an arbitrator pursuant to Paragraph 7 of the Neutrality Agreement "shall be final and biding on the parties and all the employees covered by [the Neutrality Agreement]."

### The Union's Organizing Campaign and Previous Arbitration

17. On or about January 2, 2019, the Union notified AMUSA that it was commencing an organizing campaign at the AM/NS Calvert facility pursuant to the terms of the Neutrality Agreement.

18. Both AMUSA and AM/NS agreed with the Union that AM/NS was bound by the terms of the Neutrality Agreement.

19. Pursuant to Paragraph 7(a) of the Neutrality Agreement, the Union and AM/NS established a Joint Dispute Resolution Committee consisting of one representative from each party.

20. Through the Joint Dispute Resolution Committee process, both the Union and AM/NS raised issues they alleged were violations of the Neutrality Agreement by the other party.

21. The Union and AM/NS were not able to resolve all of their disagreements through the Joint Dispute Resolution Committee process, and both sides invoked the arbitration provision of Paragraph 7.

22. The Union formally invoked the arbitration provision of Paragraph 7 through a letter to AM/NS dated March 1, 2019, alleging numerous violations of the Neutrality Agreement by AM/NS that the Union demanded to have adjudicated by an arbitrator.

23. AM/NS formally invoked the arbitration provision of Paragraph 7 through a letter to Arbitrator Terry Bethel dated March 5, 2019, to which it attached portions of the BLA and a Complaint and Demand for Arbitration.

24. In ¶6 of its Complaint and Demand for Arbitration, AM/NS acknowledged that "the Neutrality Agreement within the [BLA] between AMUSA and the USW has been interpreted to apply to AM/NS."

25. When Arbitrator Bethel was unable to hear the case within the timeframe required by the Neutrality Agreement, the parties selected Arbitrator David Dilts to serve as the arbitrator. A hearing was conducted with Arbitrator Dilts on March 19 and March 20, 2019.

26. Arbitrator Dilts issued a written award dated April 4, 2019. In his award he found AM/NS committed numerous violations of the Neutrality Agreement and ordered a new Union organizing campaign to be conducted under the terms of the Neutrality Agreement.

**The Remedial Organizing Campaign and the Remedial Organizing Campaign Agreement**

27. The Union and AM/NS could not agree on how to implement Arbitrator Dilts' award. On or about April 8, 2019, AM/NS submitted to Arbitrator Dilts an application for clarification and an abeyance order, and a request for a compliance hearing. The Union responded on or about April 9, 2019, opposing the request.

28. On or about April 14, 2019, Arbitrator Dilts issued an award denying AM/NS's request for a compliance hearing and clarifying his April 4 award.

29. Following the April 14, 2019 supplemental award, AM/NS and the Union still had unresolved issues about implementing Arbitrator Dilts' award, but they were able to resolve these issues between themselves.

30. On or about June 6, 2019, AM/NS and the Union executed a settlement agreement ("Remedial Organizing Campaign Agreement") setting the terms for the remedial organizing campaign ordered by Arbitrator Dilts. A true and correct copy of the Remedial Organizing Campaign Agreement is attached hereto as Exhibit 2.

31. The Remedial Organizing Campaign Agreement is a written contract between the Union and AM/NS which affirms that AM/NS is a party to the Neutrality Agreement.

32. The Remedial Organizing Campaign Agreement provides, in its preamble, that "[AM/NS and the Union] desire . . . to comply with the Neutrality Agreement . . ."

**The Parties' Dispute Over Card Check and Defendants' Refusal to Arbitrate**

33. On or about July 28, 2019, the Union demanded recognition pursuant to Paragraph 3(d)(5) of the Neutrality Agreement, and pursuant to that paragraph the Union requested that the parties submit the signed union authorization cards collected by the Union to a neutral arbitrator for review and determination of whether the Union had the support of a majority of the proposed bargaining unit.

34. AM/NS refused to submit the Union's authorization cards to a neutral for review pursuant to the terms of Paragraph 3(d)(5); instead, it sought to impose additional conditions on the neutral's review of the cards beyond what is provided for in the Neutrality Agreement.

35. On or about August 6, 2019, the Union sent AM/NS a letter demanding arbitration, pursuant to Paragraph 7 of the Neutrality Agreement, over AM/NS's alleged violation of Paragraph 3(d)(5).

36. On or about August 7, 2019, AM/NS refused to arbitrate its alleged violation of Paragraph 3(d)(5) of the Neutrality Agreement.

37. On or about August 14, 2019, the Union wrote to AMUSA, requesting that AMUSA direct AM/NS to comply with the card check procedures of Paragraph 3(d)(5) or, in the alternative, direct AM/NS to submit its alleged violation of Paragraph 3(d)(5) to arbitration pursuant to Paragraph 7.

38. On or about August 16, 2019, AMUSA refused the Union's demand for arbitration over AM/NS's alleged violation of Paragraph 3(d)(5) of the Neutrality Agreement.

39. AM/NS's alleged violation of Paragraph 3(d)(5) of the Neutrality Agreement is an "alleged violation or dispute involving the terms of" the Neutrality Agreement as defined in Paragraph 7(a) of the Neutrality Agreement.

40. The Union has demanded that AM/NS and AMUSA submit the alleged violation of Paragraph 3(d)(5) to final and binding arbitration as required by Paragraph 7(a) of the Neutrality Agreement.

## Count I

This Count is brought to enforce the Union's right to arbitrate under the Basic Labor Agreement and the Settlement Agreement Term Sheet. Plaintiff re-alleges and incorporates by reference Paragraphs 1-40.

41. AM/NS and AMUSA have refused without justification to arbitrate the alleged violation of Paragraph 3(d)(5).

**WHEREFORE**, the Union respectfully requests that this Court:

a. Find that the alleged violation of Paragraph 3(d)(5) of the Neutrality Agreement is arbitrable;

b. Order the Defendants to arbitrate the dispute over the alleged violation of Paragraph 3(d)(5) pursuant to the procedures described by Paragraph 7 of the Neutrality Agreement;

c. Order the Defendants to pay the reasonable attorneys' fees and costs incurred by the Union in bringing this action;

d. Issue such other relief as this Court may determine is just and proper.

## Count II

This Count is brought for the enforcement of the provisions of the Basic Labor Agreement, as an alternative to Count I. Plaintiff re-alleges and incorporates by reference Paragraphs 1-41.

42. The refusal of Defendant AM/NS to submit the authorization cards to a neutral after the Plaintiff's demand for recognition on July 23, 2019 violated the Basic Labor Agreement..

43. The refusal of Defendant AMUSA to direct AM/NS to comply with the card check procedures set forth in the Neutrality provisions of the Basic Labor Agreement violated the Basic Labor Agreement.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

a. Find that the Defendants have violated the Basic Labor Agreement;

b. Order the Defendants to comply with the provisions of the Basic Labor Agreement and recognize the Union as the exclusive bargaining representative of the bargaining unit defined in the Settlement Agreement Term Sheet;

c. Order the Defendants to compensate the Union for damages that it has suffered from Defendants' violation of collective bargaining agreements;

c.  Order the Defendants to pay the reasonable attorneys' fees and costs incurred by the Union in bringing this action;

d.  Issue such other relief as this Court may determine is just and proper.

/s/ Anthony Resnick

Assistant General Counsel

United Steelworkers
60 Blvd of the Allies, Room 807
Pittsburgh, PA  15222
412-562-2562 (phone)
412-562-2429 (fax)
aresnick@usw.org


/s/ Stephen A. Yokich
Dowd, Bloch, Bennett, Cervone
 Auerbach & Yokich
8 S. Michigan Ave. - 19th Floor
Chicago, Illinois 60603
312-372-1361 (phone)
312-372-6599 (fax)
syokich@laboradvocates.com